BONDED OIL CO., APPELLANT, *v.* LEACH, ADMR., ET AL., APPELLEES.

(No. 603—Decided December 31, 1962.)

*Messrs. Martin, Browne, Hull, Harper & Bridgman,* for appellant.

*Mr. Mark McElroy,* attorney general, and *Mr. Daniel T. Lehigh,* for appellees.

KERNS, J. This is an appeal on questions of law from a judgment of the Court of Common Pleas of Clark County affirming a decision of the board of review, which disallowed the application of the plaintiff, appellant herein, to institute a further appeal from the decision of the Administrator of the Bureau of Unemployment Compensation.

The referee's findings of fact, upon which the decision of the board of review was based, are as follows:

"Claimant filed his application for determination of benefit rights on January 23, 1961, with respect to the week beginning January 22, 1961. He was unemployed then and he made a valid loyalty affidavit. Claimant claimed dependency allowances for his legally married dependent spouse, as well as for his two dependent children under 18 years of age who are wholly or chiefly supported by him.

"During his base period—calendar year 1960—claimant worked for the Bonded Oil Company of Springfield, Ohio, in 28 weeks, with earnings of $1829.59. The high quarter earnings were $859.54.

"Claimant worked for the above employer at its gasoline station at Columbia Parkway and Bains Street in Cincinnati, from June 2, 1960, until December 9, 1960. Between August and December claimant was assistant manager. In this capacity he not only waited on the trade, but also carried the money. Claimant still had this latter responsibility on December 9th.

"According to Mr. Downs, the night man at the Columbia Parkway station, he relieved claimant and checked in at 9:30 p. m. on the night of December 8, 1960. Though usually claimant went home after a half hour, on this particular night he remained until 11:15 p. m., with a male friend or relative. Mr. Downs noticed that claimant had money in his pocket, and he considered that unusual because on the previous day claimant had tried unsuccessfully to borrow from him. According to Downs, claimant put the checks and some of the day's receipts into the safe, after giving him a fund of $50.00 for change, but he said that claimant still retained in his possession some of the company's money. Claimant and his friend then left, headed, Downs said, for northern Kentucky.

"According to Downs, claimant and his friends or relative returned to the station, at or about 2:15 a. m. on December 9th.

At that time, Downs said, claimant opened the safe and got out some money. The friend or relative argued against returning to northern Kentucky, but claimant's view prevailed and they again left. At 4:00 a. m. they returned, according to Downs, showing the effect of drinking. Claimant then totalled the checks and charge slips. Mr. Downs said that claimant remarked that he was short a sufficient amount to end up in jail. According to Downs, claimant asserted that the money he used was owed to him by the company, but due to the amount involved this was disputed by Downs. He said that claimant phoned people during the night in an effort to borrow money.

"Claimant then went to sleep in the station, an action which violated the rules. At 5:30 a. m., Downs tried unsuccessfully to awaken claimant. Finally, at 7:45 a. m., claimant got up. When Downs asked about checking out, he said, claimant declined and remarked that he probably would be discharged.

"At or about 9:00 a. m. Mr. Goodpaster, the district manager, came to the station to make an audit because he was checking in a new manager. A man from Springfield had been acting as manager. After Goodpaster arrived, claimant said that he had to go to court, apparently for a debtor's examination, and he got permission to leave. At 11:00 a. m. claimant phoned the station, saying that he had found money in his pocket and would bring it in.

"In his audit Goodpaster had discovered that claimant was $324.00 short. When claimant did not appear by 1:00 p. m., Goodpaster notified the police, and eventually an officer came for a report. Claimant again phoned, and said that his car had broken down in Mt. Healthy. The policeman said that an effort would be made to locate claimant there, but later the police reported inability to find claimant.

"They suggested to Goodpaster that he should swear out a warrant for claimant's arrest on a charge of embezzlement, and he did so.

"During the early evening of December 9th, claimant went to the station and turned over $300.00, for which the manager gave him a receipt. Mention was made to claimant about the existence of the warrant for his arrest. Claimant phoned Goodpaster and asked him to drop the charges, but Goodpaster referred claimant to the police. When claimant contacted the

police, they came and arrested him. Claimant's case was heard in police court on the following day, and he was bound over to the grand jury. However, the jury ignored the charge, so there was no court conviction of claimant on any charge. No written statement containing an admission was obtained from claimant, and he did not appear at the hearing.

"Claimant was able and available for work and seeking it during the week ending January 21, 1961. He refused no job referrals."

The rationale of the referee's decision is as follows:

"Though there were irregularities with respect to claimant's handling of the company's receipts, which was dishonest, he was not convicted of anything in court and made no actual admission. Another man's statement that claimant admitted a dishonest act is not the same as claimant's own admission; it is merely someone saying that claimant made an admission, and does not constitute an admission itself. No written admission was obtained from claimant, and he did not appear and testify. Hence, the provisions of Section 4141.29 (D) (2) (g), Revised Code, do not apply to the case.

"However, the circumstances show that claimant's discharge was justified. Therefore, under the provisions of Section 4141.29 (D) (2) (a), Revised Code, claimant's benefit rights should be suspended as of January 22, 1961, until he establishes eligibility for benefits. Claimant's first claim for benefits for the week ending January 28, 1961, should be disallowed."

The plaintiff challenges the separation of the employee for "just cause" under Section 4141.29 (D) (2) (a), rather than for "admitted" dishonesty under Section 4141.29 (D) (2) (g), because it has a bearing upon an employer's account in the event of subsequent employment followed by further unemployment.

Section 4141.29 (D) (2) (g), Revised Code, insofar as pertinent, provides that no individual may be paid benefits if the administrator finds that:

"(g)  He was discharged by a base period employer or from his most recent work *for dishonesty* in connection with such work, *provided such dishonesty is admitted by such individual, or such dishonesty has resulted in a conviction* in a court of competent jurisdiction; * * *" (Emphasis ours.)

The question thus presented in this appeal is whether dishonesty was "admitted" within the intent and purpose of the statute. The plaintiff contends that the testimony of a fellow employee concerning statements allegedly made to him by the claimant, from which dishonesty might reasonably be inferred, constitutes an admission of dishonesty by the claimant within the scope of the statute. However, we are unable to agree with this contention. A fact is not "admitted" merely because a witness testifies to it and no one denies it. The trier of the facts is under no compulsion to believe any witness, and this fact alone serves to illustrate that the testimony of one person, regardless of its import, is not tantamount to an admission by another. Although the statements attributed to the employee at or about the time of the act in question tend to prove dishonesty, they do not have the conclusive character of an admission of dishonesty by the employee himself.

We do not think that the "admitted" alluded to in the statute is necessarily limited to admissions made in the course of legal proceedings upon a criminal charge, such as, for example, a plea of guilty. Nevertheless, we are of the opinion that the statute contemplates an unequivocal acknowledgment of dishonesty by the employee—an acknowledgment which excludes doubt and renders it unnecessary to conduct a hearing to determine whether the employee was, in fact, guilty of dishonesty.

Accordingly, the judgment of the trial court, finding that the decision of the board of review was not unlawful, unreasonable, or against the manifest weight of the evidence, will be, and hereby is, affirmed.

*Judgment affirmed.*

CRAWFORD, P. J., and SHERER, J., concur.